IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 16-cv-00622-RPM

EDWARD B. CORDES,
solely in his capacity as the court appointed receiver
in the District Court of Hamilton County, Kansas, Case No. 10-CV-7

     Plaintiff,
v.

UNITED STATES OF AMERICA,

     Defendant.

---

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

The First National Bank of Syracuse, Kansas ("Bank"), on August 17, 2007, received a note in the principal amount of $28,000,000 from Vreba-Hoff Genetics, LLC ("V-H Genetics"), an Ohio entity owned by Vreba Dairy, B.V. ("Vreba"), a Netherlands company owned by W.H.M. "Willy" Van Bakel, a citizen of the Netherlands.

On October 31, 2007, the Bank received a note in the principal amount of $13,000,000 from West Kansas Dairy, LLC ("West Kansas Dairy"), a Kansas entity owned by Vebra, through its ownership of Vreba-Hoff Genetics.

Payment of these notes was guaranteed by Vreba, the sole member of Orleton Farms, LLC ("Orleton Farms"), an Ohio entity, the owner of a 6,000 acre farm in Ohio. As security for Vreba's guarantee, Orleton Farms granted a third priority mortgage on the farm.

The notes went into default and the Bank seized the assets of V-H Genetics and West Kansas Dairy. They were sold at auction with the proceeds applied as partial payment on the notes.

The Orleton Farms property was sold at public auction for $27,100,000, an amount insufficient to pay the Bank's mortgage. Because the owner of Orleton Farms was Vreba, a foreign entity, $2,710,000 was paid to the IRS as required by Section 1445(a) of the Internal Revenue Code to be withheld to pay Vreba's potential tax liability.

On September 17, 2009, the Bank obtained a Security Agreement reciting the following twenty-four entities as "Debtors:" Vreba; Orleton Farms; Midwest Ag Investments, LLC; V-H Genetics; West Kansas Dairy; Vreba-Hoff Holdings, LLC; Vreba-Hoff Dairy, LLC; Blue Streams Farms, LLC; Wild Cat Farms, LLC; Waldron Dairy, LLC; Andrews Dairy, LLC; Four Leaf Clover Dairy, LLC; Vreba-Hoff Dairy Development, LLC; Vreba-Hoff Dairy Leasing, LLC; Hill Dairy, LLC; Earth Art Leasing, LLC; Springfield Dairy, LLC; Union-Go Diary, LLC; Van Ham Dairy Leasing, LLC; Hulsbosch Dairy Farm Leasing, LLC; Four Leaf Clover Dairy Leasing, LLC; Yellow Hills Dairy Leasing, LLC; New Holland Dairy Leasing, LLC; and Bekel Leasing, LLC. (Ex. 1 to Compl., doc. 1-1.) The only loans described in the Security Agreement were the notes from V-H Genetics and West Kansas Dairy. (*Id.*)

The collateral was described in this language:

All Federal Income Tax Refunds of the Debtors for tax year 2009, specifically including but no [*sic*] limited to, the Debtors' anticipated refund of a Foreign Investment in Real Property Tax Act of 1980 Federal Income Tax withholding in the amount of $2,710,000 arising from a withholding from the sale of real property owned by Orleton Farms, LLC to Midwest Farms, LLC which is the subject of IRS Form 8288 dated August 28, 2009.

(*Id.*)  The only signature for the "Debtors" was that of Willy Van Bakel, as director of Vreba, and manager or president of the other entities.

In 2009, Vreba filed a consolidated income tax return reflecting the combined activities of at least 20 other entities that it owned (directly or indirectly) and operated in the United States.  Entities identified as "Debtors" in the Security Agreement were among those included in the consolidated tax return.

This return was under examination by the IRS for several years.  Ten limited liability companies included on the return had failed to pay employment taxes which they reported, in an aggregate amount exceeding $1.6 million dollars.  Those ten entities, their states of incorporation, and their relationship to Vreba are follows:

•V-H Genetics was an Ohio limited liability company, with operations in Oklahoma. Vreba was its sole member.

•West Kansas Dairy was a Kansas limited liability company, with operations in Kansas. Its sole member was V-H Genetics, which was solely owned by Vreba.

•Vreba-Hoff Holdings, LLC ("V-H Holdings") was an Ohio limited liability company. Vreba owned a 50% interest in V-H Holdings.

•Vreba-Hoff Dairy Development, LLC ("V-H Development") was an Ohio limited liability company, with operations in Ohio.  Its sole member was V-H Holdings, the holding company in which Vreba had a 50% interest.

•Hill Dairy, LLC was an Indiana limited liability company, with operations in that state. Its sole member was V-H Development, which was solely owned by V-H Holdings, in which Vreba had a 50% interest.

- Rock Creek Dairy Leasing, LLC was an Indiana limited liability company. Its sole member was Midwest Dairy Investments, LLC, which was solely owned by V-H Development. As set forth above, V-H Development was solely owned by V-H Holdings, the holding company in which Vreba had a 50% interest.

- Andrews Dairy Farm, LLC was an Indiana limited liability company. Its sole member was V-H Holdings, in which Vreba had a 50% interest.

- Blue Stream Farms, LLC was an Ohio limited liability company, with operations in Ohio. Its sole member was V-H Holdings, the holding company in which Vreba had a 50% interest.

- Vreba-Hoff Dairy, LLC was a Michigan limited liability company, with operations in Michigan. Its sole member was V-H Holdings, the holding company in which Vreba had a 50% interest.

- Wild Cat Farms, LLC was an Ohio limited liability company. Its sole member was V-H Holdings, the holding company in which Vreba had a 50% interest.

- Great Lakes Ag, LLC was Michigan limited liability company. It was owned in part (50%) by Vreba Equipment, B.V., an entity that shared a common parent with Vreba and was ultimately owned by Willy Van Bakel.

For ease of reference, those ten entities are referred to collectively as "the Taxpayer LLCs."

Emily Ebaugh, an IRS field revenue officer, was assigned to collect the unpaid employment taxes of the Taxpayer LLCs.

Section 6672 of the Internal Revenue Code authorizes the imposition of personal liability for taxes on "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof . . . ."  Ebaugh's investigation and collection efforts focused in part on whether personal liability for the unpaid employment taxes could be imposed on Willy Van Bakel, Aldert Nieuwenhuis, Marcus Carlin or others under that section.[1]

Ultimately the IRS determined that Vreba owed no income tax for 2009. Therefore the $2,710,000 constituted an overpayment.

On December 21, 2010, the Bank obtained a judgment for more than $20,000,000 against "Vrebadairy," W. H. M. Van Bakel and other named defendants and for foreclosure in the District Court of Hamilton County, Kansas.

During bankruptcy proceedings for Midwest Agriculture Investments, one of the "Debtors" in the Security Agreement, counsel for the Bank deposed Robert Boyer, a C.P.A. retained to help the Taxpayer LLCs and the individuals subject to liability for the unpaid employment taxes, and learned of a plan to use Vreba's 2009 tax overpayment from the Consolidated Tax Return to satisfy the unpaid employment taxes of the Taxpayer LLCs.

That discovery prompted the Bank to petition for and obtain an order from the Hamilton County Court on July 19, 2011, appointing Edward B. Cordes as Receiver to collect on the "Tax Refund Collateral" pursuant to the Security Agreement and pay the proceeds to the Bank. (Ex. 5 to Compl.)

---

[1]The roles of these men are described later.

Ebaugh believed that information she had learned during her investigation into the operations of the Taxpayer LLCs showed that Van Bakel disregarded the corporate separateness of all the Vreba entities and treated their assets as interchangeable. (Pl.'s Ex. 8, Ebaugh Dep. 73:10 – 75:20; *see also* Def.'s Ex. 15, Boyer Dep. 155:13-16.) Rather than holding Willy Van Bakel (or Nieuwenhuis and/or Carlin) personally liable pursuant to IRC § 6672 for the unpaid employment taxes, the IRS instead decided to offset the employment tax liabilities against Vreba's 2009 tax overpayment, on the theory that Vreba and the Taxpayer LLCs were alter egos.

Penalties and interest had accrued on the Taxpayer LLCs' employment tax obligations. By November 9, 2015, those ten entities owed employment taxes totaling $1,819,518.89. (Pl.'s Ex. 3.) In addition, interest had accrued on the funds held by the IRS, due to the IRS's delay in processing Vreba's tax refund. (Ex. 9 to Compl.)

On November 9, 2015, the IRS offset $1,819,518.89 (the amount of the combined unpaid employment tax liabilities) against Vreba's 2009 tax overpayment. On November 10, 2015, a check in the amount of $1,028,173.12, drawn on the United States Treasury, was issued to the Receiver for Vreba's tax refund. (Ex. 10 to the Compl.)

The Receiver filed this action on March 16, 2016, seeking judgment against the Government in the amount of $1,681,826.88, plus interest, and attorney's fees and costs. Plaintiff contends that the entire amount of the 2009 tax overpayment is owed to the Bank, on account of its secured interest in the 2009 tax refund.

The Government moved for summary judgment asking this Court to determine that the IRS was entitled to offset the employment liabilities of the Taxpayer LLCs from the Vreba overpayment because they are alter egos of Vreba under federal common law, or alternatively

under state law.  The Receiver opposes the motion, contending that the laws of the several states under which they were organized must be followed and that there are factual issues that must be determined at trial.  The parties have submitted an extensive record of deposition excerpts and exhibits.  The Court heard argument of counsel on January 9, 2018.

Plaintiff's counsel conceded at oral argument that the IRS properly applied funds from Vreba's 2009 tax overpayment to satisfy the 2008 employment tax liabilities of West Kansas Dairy in the total amount of $192,491.89.  That determination does not depend on an alter ego analysis.  The Government properly offset that amount because tax regulations in effect before January 1, 2009 provided that the owner of a single-owner LLC had ultimate responsibility for the LLC's employment tax obligations.  *See* 26 C.F.R. § 301.7701-2(c)(2) (effective January 1, 1997 – December 31, 2008).[2]

With respect to its offset of the remaining disputed funds, the Government relies on the corporate veil piercing (or alter ego) doctrine.  Federal tax liens may encumber property of a taxpayer's alter ego.  *See G.M. Leasing Corp. v. United States*, 429 U.S. 338, 351 (1977); *United States v. Gosnell*, 961 F.2d 1518, 1520 (10th Cir. 1992).  Corporations and LLCs may be alter egos of a taxpayer.  *See, e.g., Horton Dairy, Inc. v. United States*, 986 F.2d 286 (8th Cir. 1993); *Politte v. United States*, 2012 WL 965996, **9 -11 (S.D. Cal.  2012), *aff'd* 587 Fed. App'x 406 (9th Cir. 2014).

The law of this Circuit and others holds that a federal court should look to state law to determine whether another person is the alter ego of a taxpayer.  *See Floyd v. IRS*, 151 F.3d

---

[2]*See McNamee v IRS*, 488 F.3d 100, 109 - 110 (2d Cir. 2007) (discussing that version of 26 C.F.R. § 301.7701-2(c)).

1295, 1298-1300 (10th Cir. 1998) (rejecting the IRS's reverse veil-piercing theory because the Kansas Supreme Court had not clearly adopted that doctrine); *see also Old West Annuity & Life Ins. Co. v. Apollo Group*, 605 F.3d 856, 861-62 (11th Cir. 2010) (collecting cases).[3]

Under state and federal common law, factors relevant to the determination of whether an entity's separate status should be disregarded include considerations such as:

> (1) whether a corporation is operated as a separate entity; (2) commingling of funds and other assets; (3) failure to maintain adequate corporate records or minutes; (4) the nature of the corporation's ownership and control; (5) absence of corporate assets and undercapitalization; (6) use of a corporation as a mere shell, instrumentality or conduit of an individual or another corporation; (7) disregard of legal formalities and the failure to maintain an arms-length relationship among related entities; and (8) diversion of the corporation's funds or assets to noncorporate uses.

*See Greater Kan. City Roofing*, 2 F.3d at 1052, n.6 (quoting *United States v. Van Diviner*, 822 F.2d 960, 965 (10th Cir.1987)); *Ryan Racing, LLC v.Gentilozzi*, 231 F.Supp. 3d 269, 275-76 (W.D. Mich. 2017) (quoting *Glenn v. TPI Petroleum, Inc.*, 305 Mich. App. 698, 854 N.W.2d 509, 520 (2014)); *Reed v. Reid*, 980 N.E. 2d 277, 301 (Ind. 2012); *State ex rel. DeWine v. S&R Recycling, Inc.*, 195 Ohio App. 3d 744, 961 N.E.2d 1153, 1160 (Ohio App. 2011); *Gilbert v. Sec. Fin. Corp.*, 2006 Okla. 58, 152 P.3d 165, 175 (2006); *Dean Operations, Inc. v. One Seventy Assocs.*, 257 Kan. 676, 896 P.2d 1012, 1016-18 (1995). It must also be shown that the alleged alter ego employed the corporation's entity status to perpetuate fraud or illegality or to shield similar wrongful or unjust conduct.

---

[3] In cases involving certain federal programs (but not federal tax liens), the United States Court of Appeals for the Tenth Circuit has applied federal common law to determine whether an entity's corporate status should be disregarded. *See NLRB v. Greater Kansas City Roofing*, 2 F.3d 1047, 1052 (10th Cir. 1993).

Beginning in approximately 1997, Willy Van Bakel and Vreba, through various subsidiary entities, worked with as many as 70 dairy farmers in the Netherlands and other countries to relocate their dairy farms in the United States and assisted them in securing property and constructing facilities. (*See* Pl.'s Ex. 7, Schwartz report at p. 2 of 14.) Farms and other business were established in Ohio, Indiana, Michigan, Kansas and Oklahoma and operated as limited liability companies, with Vreba having a direct or indirect ownership interest in them.

Adverse economic conditions in 2008 caused severe financial distress for dairy farms and other businesses in the Vreba corporate family. Vreba used V-H Development, a subsidiary with a corporate office in Wauseon, Ohio, to attempt to keep the businesses going by centralizing administrative functions, including payment of expenses and providing assistance with banking relationships.

V-H Development was staffed by Karen Hoover, a senior accountant; Marcus Carlin, a CPA as controller; and Heather Boger, an accounts payable clerk. Their testimony has been provided in depositions. (Pl.'s Exs. 9, 12 & 13; Def's Exs. 12, 13 & 14 to Watson Decl.) Aldert "Ad" Nieuwenhuis, Vreba's Chief Financial Officer, was also involved.

Carlin began work for V-H Development in March, 2008, reporting to Nieuwenhuis. Carlin started by preparing financial statements. He found that "twenty-some entities were in complete disarray." (Def.'s Ex. 13, Carlin Dep. 7:10 – 9:24.) There were inter-company transfers that were not always recorded or recorded improperly. (*Id.*) Carlin discovered that every entity was cross-collateralized. (*Id.* 12:2-23.)

By the middle of 2009 the entities were unable to pay their bills as they became due.

Carlin testified that before bills would be paid, bookkeepers assigned to particular entities would make a list of those entities' obligations. Carlin recalled that "a lot of times it happened that we would see what we would have with the milk checks coming in, what we had outgoing, and then kind of divvy it up from there." (Carlin Dep. 28:15-17.) Carlin said that funds to cover the bills might come from "whatever particular entity had a few extra pennies in its account." (*Id*. 30:13-23.) Carlin testified that by 2009 Van Bakel was making the ultimate decisions about which bills would be paid and from which accounts. (Carlin Dep. 32:3-25; 67:15 – 68:2.)

Karen Hoover testified that at times Van Bakel directed that funds be taken from the dairy operations and used to pay persons who had invested in the dairy business, including Van Bakel's family members. (Def.'s Ex. 12, Hoover Dep. 49:3 – 56:17; 71:10 – 75:12.) Hoover wrote emails in 2009 concerning the lack of funds to pay outstanding obligations of various entities and Willy Van Bakel's directions that priority be given to payment of certain creditors. (Hoover Dep. 31:10 – 44:9 and Dep. Ex. 36.)

Heather Boger also testified that Willy Van Bakel took funds from the dairy operations to make payments to persons who had invested in the dairy business, including family members. (Def.'s Ex. 14, Boger Dep. 16:13 – 17:24.) Boger said that Van Bakel at times directed that funds be taken from the entities to pay his company credit card bills. (*Id.* 23:11 – 24:17.)

When the Bank deposed Robert Boyer (the CPA hired to assist with the Taxpayer LLCs' employment tax liabilities) in 2011, he testified as follows:

> One of the things I found out in working this case is that they treated these entities in effect as one for moving money around. They would take money out of one and put it in another to pay taxes, for example, or other things. They would move money whenever it was convenient to move, without necessarily dotting all the Is and crossing all the Ts. If there was $10,000 in X's account and they needed to pay a $10,000 bill, liability over here on Y, that's what they would do. . . . From the information that I had gotten from them, about having to transfer funds – money – from this entity to pay the taxes over here on this entity, all right? When you're doing that, these are interrelated transactions. And that's what these folks were doing. They weren't truly treating each of these entities as separate entities. If West Kansas has an extra $20,000 and Vreba Dairy needed it, they moved the money. . . .

(Def.'s Ex. 15, Boyer Dep. 156:4 – 157:11.)

The testimony of these witnesses establishes that funds were being commingled; the entities were in debt and undercapitalized; legal formalities were being disregarded; arms-length relationships were not being maintained among related entities, and funds were being diverted, according to Willy Van Bakel's directions. While this was occurring, employment tax obligations of the Taxpayer LLCs were not being paid.

The Receiver submitted a report from Gary Schwartz, CFE, to negate the finding of an alter ego relationship between Vreba and the Taxpayer LLCs. He reviewed the documents produced by the IRS and found them to be inadequate to support the findings it made. Schwartz pointed out the failures to conduct an adequate investigation of financial records and tax returns and the failure to make an analysis of the organizational structure of Vreba or its related entities.

These criticisms would be important if this Court were conducting a review of the IRS decision as in an administrative appeal. That is not the role of the Court in a tax refund suit. The question is considered de novo. *See Trinity Indus., Inc. v. United States*, 757 F.3d 400, 413 (5th Cir. 2014) ("In tax refund actions, the district court reviews de novo the Commissioner's

decision regarding a taxpayer's tax liability."); *Int'l Paper Co. v. United States*, 36 Fed.Cl. 313, 320 (1996) (recognizing the "*de novo* nature of tax refund proceedings").

There is no information presented as to the actual operations of the Taxpayer LLCs before 2008. What the record does show is that when the economic crisis developed Van Bakel took control of them through V-H Development. That changed the relationships and stripped the managers of the Taxpayer LLCs from any autonomy in their financial affairs.

The Receiver says that Vreba had no bank accounts and no employees, arguing that these facts are evidence that Vreba maintained a separate corporate identity and had no involvement in the operations of the Taxpayer LLCs. To the contrary, those facts show that Vreba functioned entirely through its related entities.

In drafting the Security Agreement to expand the definition of "Debtors" beyond the legal relationship between the Bank and the two original borrowers and guarantor, the Bank apparently recognized the lack of corporate separateness between Vreba and its subsidiaries. By defining the "Debtors" to include other entities associated with Vreba and by describing the collateral to include "the Debtors'" interest in the anticipated refund, the Bank evidenced its understanding that entities associated with Vreba would have an interest in the 2009 tax overpayment.

The overpayment results from the losses shown in the Consolidated Tax Return. If the entities included in that filing were truly independent and if the Bank's security interest did not exist then payment would have to be made according to the losses sustained by each entity taxpayer.

Plaintiff's counsel recognized that at oral argument as a reason for including them as additional debtors. Otherwise, Van Bakel would have no authority to sign the Security Agreement to in effect convey any interest in the overpayment each entity may have had. In essence, the Bank's inclusion of these additional entities to the definition of debtor in the Security Agreement is an admission that by 2009, Vreba and its related entities were so entangled that the alter ego doctrine is applicable.

Based on the foregoing, it is

ORDERED that Defendant's motion for summary judgment [doc. 25] is granted. The clerk shall enter a final judgment dismissing Plaintiff's claims and this civil action, with an award of Defendant's costs.

Dated: January 22, 2018

BY THE COURT:

s/Richard P. Matsch

_____

Richard P. Matsch, Senior Judge